IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2002 Session

**JIM REAGAN, ET AL. v. WILLIAM V. HIGGINS, ET AL.**

**Appeal from the Chancery Court for Sevier County**
**No. 96-2-032    Telford E. Forgety, Jr., Chancellor**

**FILED FEBRUARY 28, 2002**

**No. E2001-00121-COA-R3-CV**

AND

**CHARLES BLALOCK & SONS, INC. v. WILLIAM V. HIGGINS, ET AL.**

**Interlocutory Appeal from the Circuit Court for Sevier County**
**No. 96-748-1     Ben W. Hooper, II, Judge**

**E2001-01679-COA-R9-CV**

These consolidated appeals involve disputes arising under a contract for the construction of a motel. In the first action, filed in chancery court, the general contractors, Jim Reagan and Howard Sexton, doing business as Precision Construction Company ("Precision"), filed suit against the owners, William V. Higgins and wife, Marilyn Higgins, seeking to recover money allegedly due pursuant to the parties' contract and for extra work allegedly requested by the Higgins (this suit sometimes will be referred to herein as "the Precision litigation"). The parties were eventually ordered to arbitration, wherein Precision was awarded a judgment. The trial court confirmed the award, and the defendants now appeal, arguing, *inter alia*, that the trial court erred in ordering the parties to arbitrate their dispute. In the second action, filed in circuit court, which was brought by a subcontractor, Charles Blalock & Sons, Inc. ("Blalock"), against the Higgins (this suit sometimes will be referred to herein as "the Blalock litigation"), the trial court dismissed a third party complaint filed by Mr. Higgins against Precision on the ground that the arbitration award in the first litigation was *res judicata* as to Precision's liability with respect to Blalock's claim. The trial court granted the Higgins an interlocutory appeal as to Precision's liability in the circuit court action, following which we also granted a discretionary appeal and consolidated it with the Higgins' appeal in the chancery court action. We find that the Chancellor erred in ordering Precision and the Higgins to arbitration; accordingly, we vacate the judgment of the trial court in the chancery court action. Because the arbitration award is vacated, we further find that Mr. Higgins is not barred by *res*

*judicata* from bringing a third-party action against Precision in the circuit court suit filed by Blalock.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Remanded**

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Circuit Court
Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Thomas A. Bickers and Summer H. Stevens, Knoxville, Tennessee, for the appellant, William V. Higgins.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellant, Marilyn Higgins.

C. Paul Harrison, Knoxville, Tennessee, for the appellees, Jim Reagan and Howard Sexton d/b/a Precision Construction Company.

**OPINION**

I. *Background*

A. The Contract

These consolidated cases find their genesis in a contract for the construction of a Hampton Inn and Suites in Pigeon Forge. The contract is on a standard printed form distributed by the American Institute of Architects ("AIA") entitled "Standard Form of Agreement Between Owner and Contractor." On the first page of this document, the "Owner" is identified as Mr. and Ms. Higgins, and the "Contractor" is identified as Precision Construction Company. The contract states that the Higgins are to pay Precision $3,161,640 for its performance under the contract, with a certain percentage of the contract price, based upon work completed, to be retained by the Higgins until completion of the project.

The contract incorporates by reference AIA Document A201 entitled "General Conditions of the Contract for Construction." Among the general conditions set forth in this document is section 4.5.1, which states, in pertinent part, as follows:

> Any controversy or Claim arising out of or related to the Contract, or
> the breach thereof, shall be settled by arbitration in accordance with
> the Construction Industry Arbitration Rules of the American
> Arbitration Association....

The contract was signed by Mr. Higgins and the plaintiff, Jim Reagan, on behalf of Precision. There is no indication on the contract of Ms. Higgins' assent to the agreement.

## B.  The Precision Litigation

On February 16, 1996, Precision filed a complaint in Sevier County Chancery Court, seeking, *inter alia*, a judgment for the retainage amount of $150,000[1] as well as the cost of various "extras" that Precision alleges the Higgins requested during the course of construction.  In response to Precision's complaint, the Higgins filed an answer and a counterclaim, denying that Precision was entitled to any retainage and alleging that Precision had breached the parties' agreement by, among other things, failing to construct the project as required and by failing to pay subcontractors and materialmen.  The Higgins asserted they had incurred additional expenses as a result of this breach.

While this litigation was pending, the Higgins divorced.  Thereafter, they were represented by separate counsel.  The next significant event in the course of this lawsuit came on March 8, 1999 – more than three years after the original complaint was filed – when Precision and Mr. Higgins filed a joint motion seeking to stay the lawsuit pending arbitration.  The joint motion came for hearing on March 12, 1999, and the trial court, noting that the motion was brought "without objection from the co-defendant Marilyn Higgins," ordered the lawsuit stayed.  Eight months later, and shortly after retaining new counsel, Mr. Higgins changed his position and filed a motion to set aside the stay, arguing that arbitration was not appropriate.  Ms. Higgins, who had also retained new counsel since the trial court's order staying the litigation, joined in her former husband's motion.  The trial court denied the defendants relief and ordered the parties to proceed with arbitration.

Arbitration took place over eight days in May, 2000.  An award was rendered in favor of Precision in the amount of $419,151 as "full settlement of all claims and counterclaims submitted by the parties to this arbitration."  Mr. Higgins filed a motion seeking to vacate or modify the arbitration award.  At the hearing on this motion, Precision made an oral motion asking the trial court to find that Ms. Higgins waived any objection to the arbitration award as a result of her failure to timely file an application to vacate or modify the award.  The trial court denied Precision's motion, but confirmed the arbitration award by order entered December 13, 2000.

## C.  The Blalock Litigation

The other action being considered on this appeal commenced with the filing of a complaint in circuit court by Charles Blalock & Sons, Inc. ("Blalock"), against the Higgins in July, 1996, seeking to recover $52,943.50 allegedly owed to Blalock under a "special contract" with the Higgins to furnish materials and services in connection with the construction of the motel.  The Higgins filed an answer, denying they owed this amount and alleging they had already paid the general contractor – Precision –  for the work that was the basis for Blalock's claim.  On January 3, 2001 – less than one month following the trial court's confirmation of the arbitration award in the Precision litigation

---

[1]The Higgins did not place the retainage funds in an escrow account as required by the contract.

– Mr. Higgins was permitted to file a third-party complaint against Precision, alleging that the latter was obligated by their contract to satisfy all subcontractor claims, including Blalock's. Precision responded with a motion to dismiss on the basis of *res judicata*, arguing that "the Higgins had a fair opportunity to litigate such claim in arbitration and the Higgins certainly could and should have raised that claim." The trial court agreed and dismissed the third-party complaint. These appeals followed.

### D. Issues on Appeal

Mr. Higgins argues that the trial court in the Precision litigation erred in ordering the Higgins to arbitration and in confirming the arbitration award. He also appeals the trial court's dismissal of his third-party complaint in the Blalock litigation. In addition to adopting the issues raised by her former husband, Ms. Higgins asserts on appeal that she did not consent to arbitration and that she cannot be bound by the arbitration provision in the contract because she did not sign it and had not authorized Mr. Higgins to sign on her behalf. Finally, by way of a separate issue, Precision argues that the trial court erred in refusing to find that Ms. Higgins had waived her right to challenge the arbitration award because she did not file a timely application to vacate the ruling.

### II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the trial court with a presumption of correctness as to the trial court's findings of fact "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). No such presumption of correctness attaches to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996).

### III. *Law and Analysis*

#### A.

We begin by addressing Ms. Higgins' contention that she is not bound by the arbitration provision in the contract because she did not sign the document and Mr. Higgins had no authority to act on her behalf.

We cannot agree with Ms. Higgins' "lack of authority" contention. Ms. Higgins is bound by the terms of the contract signed by her then-husband by operation of T.C.A. § 66-11-103 (1993), which provides as follows:

> When the contract for improving real property is made with a husband or a wife who is not separated and living apart from that person's spouse, and the property is owned by the other or by both, the husband or wife who contracts shall be deemed to be the agent of the other unless such other shall within ten (10) days after learning of

the contract give the contractor written notice of that person's objection thereto.

At the time the contract was executed, Mr. and Ms. Higgins were living together as husband and wife. Furthermore, there is no evidence that Ms. Higgins lodged with Precision a timely objection to her husband executing the contract on her behalf. Accordingly, we conclude that by operation of T.C.A. § 66-11-103, Mr. Higgins signed the contract on behalf of himself and as the agent of Ms. Higgins. Thus, we find and hold that, under the circumstances of this case, Ms. Higgins is bound to the terms of that agreement, even though she personally did not sign it. Ms. Higgins' argument to the contrary is without merit.

B.

The Higgins argue that the trial court erred in ordering the parties to arbitration because, so the argument goes, Precision made a claim for payment of the retainage, which is a claim that cannot be arbitrated. In so arguing, they rely upon T.C.A. § 66-11-144 (1993), which provides, in pertinent part, as follows:

> (a) Whenever, in any contract for the improvement of real property, a certain amount or percentage of the contract price is held back by the owner or contractor, that retained amount shall be deposited in a separate escrow account with a third party giving proper security for the performance of the obligation of the owner or contractor.

> (b) As of the time of the deposit of the retained funds, such funds shall become the sole and separate property of the contractor, subcontractor, materialman, or laborer to whom they are owed.

> (c) Upon satisfactory completion of the contract, to be evidenced by a written release by the owner or contractor, all funds accumulated in the escrow account together with any interest thereon shall be paid immediately to the contractor, subcontractor, materialman or laborer to whom such funds and interest are owed.

> (d) *In the event the owner or contractor fails or refuses to execute the release provided for in subsection (c), then the contractor, subcontractor, materialman, or laborer, shall seek any remedy in a court of proper jurisdiction* and the person holding the fund as escrow agent shall bear no liability for the nonpayment thereof to the contractor, subcontractor, materialman, or laborer.

*      *      *

(g) *The provisions of this section shall be applicable to all contracts for the improvement of real property when the contract price is five hundred thousand dollars ($500,000) or greater.*

(h) *Compliance with this section shall be mandatory, and may not be waived by contract.*

(Emphasis added).

Precision argues that T.C.A. § 66-11-144 is not applicable to the instant case because, so the argument goes, the Higgins failed to deposit the retainage in an escrow account. At the hearing below, the trial court adopted Precision's argument, as can be seen from the statements made by the court in denying Mr. Higgins' motion to vacate the arbitration award:

> [T.C.A. § 66-11-144] assumes...that you've got retainage, you've got third-party escrow account, you've got an owner that refuses to sign a release to let him get out – let him get it out. And if you've got all those three things, then –
>
> \* \* \*
>
> You have to come to court.
>
> \* \* \*
>
> Not that you can, you have to. But we don't have those three things,...do we? We don't have money deposited in a third-party escrow account, we don't have an owner refusing to release the money out of the escrow account, because there's no escrow account to begin with.

The Higgins contend that the fact the retainage funds were not placed in an escrow account as required by the statute is not dispositive. They cite this Court's decision in ***Vanderheyden v. AJAY, Inc.,*** C/A No. 02A01-9803-CH-00070, 1999 Tenn. App. LEXIS 531 (Tenn. Ct. App. W.S., filed August 2, 1999), *reh'g denied*, December 15, 1999, *perm. app. denied,* June 19, 2000, the facts of which are strikingly similar in many respects to the instant case. In ***Vanderheyden***, the defendant owner contracted with the plaintiff contractor to build a movie theater. ***Id.*** at \*1-\*2. The parties' contract contained an arbitration provision identical to the one at issue in the instant case. *See* ***id.*** at \*2. The parties' contract further provided that the owner would deposit a certain percentage of the contract price, based on work completed, into an escrow account as retainage. ***Id.*** The owner terminated the contractor prior to completion of construction. ***Id.*** at \*3. Thereafter, the contractor learned that the owner had not deposited the retainage as required by the contract. ***Id.*** at \*3-\*4. The contractor filed suit seeking (1) an injunction to require the owner to deposit funds into an escrow account; (2) a judgment for the retainage amount plus interest and (3) the imposition of an equitable

lien on the property. *Id.* at \*4. The contractor later amended its complaint to assert several breach of contract claims, including "failing to approve and pay for changes requested by [the owner]." *Id.*

The trial court in *Vanderheyden* held that the contractor's claims were subject to arbitration. *Id.* at \*5. On appeal, the contractor argued that "by providing the contractor a 'remedy in a court of proper jurisdiction...,' [T.C.A. § 66-11-144] creates an exception to the enforcement of an arbitration clause under the Tennessee Uniform Arbitration Act...", *id.* at \*6, and that the statute was "enacted specifically to address a situation such as this, which must control over a general statute such as the Tennessee Uniform Arbitration Act, providing generally for the enforcement of any contractual arbitration provision." *Id.* at \*11.

After reviewing T.C.A. § 66-11-144 and the Tennessee Uniform Arbitration Act, this Court held in *Vanderheyden* as follows:

> The Tennessee Uniform Arbitration Act is clearly a general statute, applicable in nearly any situation in which the parties have agreed to submit disputes to arbitration. On the other hand, [T.C.A.] § 66-11-144 applies only to contracts for the improvement of real property in which the contract price is $500,000 or greater. Sections (a) and (b) require the owner to deposit a certain percentage of the contract price in an escrow account, and the statute also gives protection to the contractor by providing that the retainage is the property of the contractor. Unlike the Uniform Arbitration Act, [T.C.A.] § 66-11-144 is specific in nature and applies to the situation set out in the statute.
>
> In situations falling within the provisions of the statute, it sets forth a remedy for disputes regarding retainage by mandating that "the contractor...shall seek *any remedy in a court of proper jurisdiction*...." This statute is not ambiguous. Giving the language its ordinary and natural meaning, it states that the contractor may go to court to recover the retainage. Moreover, [T.C.A.] § 66-11-144(h) states that "compliance with this section shall be mandatory, and may not be waived by contract." This indicates that the remedy for the contractor set forth in the statute cannot be waived by the contractual arbitration provision.
>
> Under all of these circumstances, we must conclude that the remedy set forth in the statute is the exclusive remedy for disputes arising under the statute. Therefore, we find that the trial court erred in staying the proceedings below and ordering the parties to arbitration.

*Id.* at \*13-\*15 (citations omitted) (emphasis in *Vanderheyden*).

We find the rationale of **Vanderheyden** persuasive as applied to the facts of the instant case. Like the parties in **Vanderheyden**, the Higgins and Precision entered into a contract for the improvement of real property with a contract price greater than $500,000; their contract provided for a retainage to be set aside, a requirement that was admittedly not satisfied; their contract further provided that any dispute arising under the contract would be arbitrated; and the contractor brought suit seeking, *inter alia*, recovery of the retainage as well as damages for breach of contract. These facts lead us to conclude that the dispute between the parties in the instant case falls within the provisions of T.C.A. § 66-11-144, and, as we said in **Vanderheyden**, "the remedy set forth in [T.C.A. § 66-11-144] is the exclusive remedy for disputes arising under [that] statute." *Id*. at *14. Therefore, arbitration is not appropriate since compliance with the statute "may not be waived by contract." *See* T.C.A. § 66-11-144(h). Accordingly, we find and hold that the trial court erred in staying the proceedings and ordering the parties to arbitration. T.C.A. § 66-11-144 mandates that the disputes in the instant case must be litigated in court.

C.

Because we have determined that the trial court erred in ordering the parties to arbitration, we hereby vacate the judgment of the trial court confirming the arbitration award. Our holding renders moot the remaining issues related to the Precision litigation; therefore, we see no need to address them further. Because the judgment in the Precision litigation is vacated, we further conclude that Mr. Higgins' third-party complaint in the Blalock litigation is not barred by *res judicata*, as that doctrine applies only where the prior judgment has concluded the rights of the parties on the merits. *See* **Goeke v. Woods,** 777 S.W.2d 347, 349 (Tenn. 1989). Accordingly, we hold that the trial court's dismissal of Mr. Higgins' third-party complaint in the Blalock litigation must also be vacated.

IV. *Conclusion*

The judgment of the Sevier County Chancery Court confirming the arbitration award in favor of the plaintiffs is hereby vacated. Furthermore, the judgment of the Sevier County Circuit Court dismissing Mr. Higgins' third-party complaint is also vacated. Both cases are remanded for further proceedings, consistent with this opinion. Costs on appeal are taxed to the appellees, Jim Reagan and Howard Sexton, doing business as Precision Construction Company.

_____
CHARLES D. SUSANO, JR., JUDGE