# GOODNER v. LAWSON et al.—232 S. W. (2d) 587.

Eastern Section. April 25, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

Coffey, Durand, & Coffey, of Chattanooga, for appellant, First Federal Savings & Loan Ass'n.

Meacham & Meacham, of Chattanooga, for appellee, John A. Willding.

Moon & Anderson, of Chattanooga, for appellee, Mrs. W. W. Talley.

McAMIS, J. This appeal by First Federal Savings & Loan Association of Chattanooga involves the question of its liability to two of its borrowers, John A. Willding and Mrs. W. W. Talley, for unpaid mechanic's liens which the borrowers assert should have been paid by the Association out of the loan proceeds rather than to Lawson and Deere from whom they were purchasing their respective properties. There is no appeal from the Chancellor's holding that liens against the Willding and Talley properties in the amount of $2,208.16 and $3,020.61, respectively, were outstanding when the loans were closed and that these liens are superior to the mortgage liens of the Association. The insistence is that the Association had never engaged to disburse the proceeds of the loan or investigate liens and, consequently, it owed its borrowers no duty to see that their interests were protected. The two cases will require separate findings and, after stating the facts and circumstances more or less common to both and considering briefly the general principles controlling the relationship of the parties, we will pass first to a consideration of the Talley case.

The original bill was filed by S. G. Goodner as a general lienor's bill for the purpose of having unpaid material-men's claims established against Lot 4 owned by Willding and Lot 6 owned by Mrs. Talley. The bill named as defendants John A. Willding and Mrs. W. W. Talley, the First Federal Savings & Loan Association and various other persons. In due course it was sustained as a gener-

al lienor's bill. The Chancellor found that the Association had no express authority from its borrowers, Willding and Talley, to pay the proceeds of the loan to Lawson and Deere; that it was grossly negligent in so doing and that Willding and Mrs. Talley were entitled to judgments over against the Association in the amounts above indicated.

Bryant V. Lawson and J. N. Deere were engaged in the business of construction and selling residence houses in Chattanooga. In 1945 they purchased from one Mrs. Nance the two lots here in question and in the early part of 1946 began the construction of two houses on the lots. In February, 1946, they entered into an agreement to sell Lot 4 upon completion of the house to Willding and a little later agreed to sell Lot 6 upon completion of the house on that lot to Mrs. Talley. The price of the Willding house and lot was $8,500.00, the Talley house and lot $8,150.00. Each applied to the First Federal Savings & Loan Association for a loan to be closed when the houses were completed and title vested in the purchasers.

The Willding loan was to be a 100 per cent G. I. loan for $8,600.00, including $100.00 for loan expenses. It was to be guaranteed by the United States Government. Mrs. Talley applied for and was granted a regular Association loan for $5,600.00. The Willding loan was closed April 22, 1946, and on that date the Association, in the absence of Willding, simultaneously, accepted delivery of a deed from Lawson and Deere to Willding and delivered to them a check in the sum of $8,434.05. At the same time a work sheet or statement of disbursements made out by Mrs. Kimbrell who handled the loan for the Association was delivered to Deere to be shown to Willding, the bor-

rower, as evidence of the manner in which the proceeds of the loan had been applied. This sheet was returned to the Association a few days later by Willding for the purpose of making some complaint about a minor matter not here material. No objection was made to delivery of the check to Lawson and Deere.

The Talley loan was closed July 29, 1946. On that date the Association accepted a deed from Lawson and Deere to Mrs. Talley, recorded a deed of trust from her to the Association and delivered a check to Lawson and Deere for $2,597.15. Other checks were issued discharging a mortgage on the property, covering expenses of the loan and $300.00 due Kemp and Company from Lawson and Deere as real estate commissions for selling the property. Mrs Talley was not shown a deed or advised that she was, on that date, getting delivery of the deed; nor was she advised that a check for the balance of the proceeds of the loan, after paying loan expenses, was being delivered to Lawson and Deere, though she was present at the closing of the loan. No statement of disbursements was made out at that time or later.

No investigation was made by the Association in closing the Willding loan except that Mrs. Kimbrell says she asked Mr. Deere whether all material liens had been paid before the check was delivered. Whether this was done in closing the Talley loan is a sharply disputed issue. Mr. Kemp, President of the Association, says he made such an inquiry and that Mrs. Talley was present. Both Mrs. Talley and her daughter (who was present) testified positively that liens were not mentioned in their presence. We gather from the record that considerable confusion existed at the time of the closing of the Talley loan. A large number of other patrons were present in the room. Various participants in the con-

ference were coming and going. On this occasion as on other occasions, Mrs. Talley simply followed instructions as to where she was to sign and what she was to sign without question. We think it altogether likely that the question was asked but was not heard or, at least, was not understood by Mrs. Talley or her daughter. No affidavits were requested or required from Deere showing the payment of any liens that may have existed for materials or labor.

It further appears, that Mrs. Talley had, shortly before, suffered a nervous breakdown and that she was totally ignorant about matters incident to the purchase of property and borrowing money for that purpose. She says one reason for her confusion was the fact that the Association did not, at any time, furnish her with a statement of disbursements. There is some suggestion that Mrs. Talley was represented by Mr. Jacoway, a real estate dealer, but we think it is fairly apparent that he was in another part of the building at the time the loan was closed.

The Association had no express authority to deliver the checks to Lawson and Deere without first investigating liens or requiring affidavits showing payment of all liens as is generally the custom. There is no proof that the Association ever agreed, for a consideration or otherwise, to make an investigation as to the existence of liens and if such duty existed it was implied not express. Under such circumstances, what were the duties of the Association?

In Prater v. Fidelity Trust Co., 161 Tenn. 626, 34 S. W. (2d) 205, 207, Prater had applied for a loan from the Trust Company on property already encumbered by a mortgage securing a note for $5,000.00. The Trust Company and

Prater both knew of the existence of the mortgage and it was understood that the mortgage note was to be paid first out of the proceeds of the loan. The Trust Company paid it without requiring the surrender of the note which later turned up in the hands of an innocent purchaser. This was held to be gross negligence and, in effect, a breach of the Trust Company's agreement to discharge the prior lien out of the proceeds of the loan. As to the relationship of the parties, the court said:

"In the first place, we are not impressed with the insistence of the bank that the relationship between the parties was that of principal and agent. It was that of borrower and lender, in which situation the interest of Prater and wife on the one hand, and the lending bank on the other, were independent and distinct, although both were alike interested in seeing to it that the lien was properly and clearly discharged from the proceeds of the loan. The bank was primarily conserving its own interest and acting for its own protection. Prater and wife executed to the bank the note and the mortgage or deed of trust, but the loaning of the money was conditioned upon the release of the prior mortgage, and the bank, in accordance with well-established custom, did not delegate this matter in which it was so vitally concerned to the borrower, but itself retained the proceeds and assumed the responsibility of discharging the lien. . . . While identical as to certain details, the interests of the parties were mainly adverse—though not antagonistic—a situation fundamentally inconsistent with the relationship of principal and agent."

Beyond declaring the general principles controlling the relationship of the parties, this case is of little aid in determining the questions now before the court. In that

case, both parties knew of the existence of the lien indebtedness and the lender assumed the obligation and duty of seeing that the lien was discharged out of the proceeds of the loan. We think it is apparent from the language above quoted that, in the absence of such an undertaking on the part of the lender, it would have been held under no duty to the borrower to see to the payment of liens out of the proceeds of the loan. And see to that effect 59 C. J. S., Mortgages, Section 297, p. 369.

So, in this case, we think the Association was duty-bound to see to the payment of materialmen's liens only to the extent it assumed that duty by contract with its borrowers. It is not of controlling importance that the borrowers relied upon the Association to perform that function. They may have assumed that it would investigate for liens to protect its own interest and the prevailing custom, as shown by the proof, would seem to warrant that conclusion on the part of the borrowers. This is not enough, however, in the absence of contract to impose liability upon the Association. There must be first a duty and then a breach of that duty coupled with loss before liability would follow as the result of any negligence on the part of the Association.

█ It is insisted, however, that upon the execution of the deeds of trust and notes securing and evidencing the indebtedness of the borrowers to the Association, the loan proceeds were from that time on held by the Association in trust for the benefit of the borrowers and that it must account to them by showing either a distribution of the proceeds for their benefit or a payment to the borrowers direct. In the absence of authority conferred by the borrowers, either expressly or impliedly, we think the borrowers are correct in this insistence that

the Association must account. The same result would follow whether the funds were held in trust or are to be treated merely as money had and received and held by the Association subject to withdrawal by the borrowers.

The Association does not claim to have made payment direct to the borrowers. Payment to Lawson and Deere, the sellers, without requiring them first to discharge liens would not be for the benefit or to the advantage of the borrowers but distinctly to their disadvantage. The Association recorded the deed of trust and concurrently became obligated to account to the borrowers for the proceeds of their loans. They have not done so unless the borrowers consciously consented or agreed for the funds due them to be paid directly to Lawson and Deere. 59 C. J. S., Mortgages, Section 297, p. 369. It is not sufficient that the Association may have assumed that the money could be properly so applied. The burden is upon it to account for the money and a mistake or misunderstanding induced by its own failure to pay the money to the borrowers or explain the disbursements to them before releasing the check cannot relieve it of liability.

In the Talley case, it is not insisted that the Association had any authority to deliver the check to Lawson and Deere. The positive proof is to the contrary. The sole reliance of the Association is upon the fact that Mrs. Talley was present when the check was delivered to Deere. She positively testified that she did not know that the check was being delivered and her daughter testified that while she did not see the check, she saw a "long piece of paper" passed to Deere and assumed that it was a check. In any case, we think it was the duty of the Association to bring home to Mrs. Talley that her money was being paid directly to Lawson and Deere.

This could have been done by following the usual custom of making the check payable to the borrower and other persons interested who had liens or other rights against the property. It could have accomplished the same result by tendering to her a statement of disbursements about to be made out of the proceeds of the loan. It did neither. The payments which were made were not to her advantage and did not inure in any sense to her benefit and it results that the Association is still indebted to her in the sum of $2,597.15 plus $300.00 paid to Kemp and Company without her knowledge or consent and which did not constitute a lien upon the property.

Even if Mrs. Talley had known that a check was being delivered to Lawson and Deere she might have assumed, consistent with the general custom, that lien claimants were included as payees in the check in a manner to protect her interest. We mention this only as negating any negligence on the part of Mrs. Talley in connection with the transaction—not as reflecting upon the duty of the Association which, as held, was merely to account for the funds belonging to its borrowers either by showing payment to them or to others for their benefit and advantage.

In the Willding case, the circumstances are somewhat different and pose a more difficult question. After the most careful consideration, under the evidence set out in an unpublished portion of this opinion, we have reached the conclusion that Mr. Willding authorized Mrs. Kimbrell to deliver the check to Lawson and Deere. This is not to be confused with authority to disburse the funds. The Association was to do one thing and one thing only, namely, deliver the check to Lawson and Deere. This did not involve any discretion or the exercise of any care

in seeing that the interests of Willding were protected by the payment of liens. If, under the authority conferred upon it, the Association had undertaken to pay other parties who claimed liens it would have done so at its peril because in derogation of its instructions.

While we can understand why Mr. Willding assumed that the Association would investigate the existence of liens in protecting its own interest, we do not think he had any right to assume that it would assume that obligation for his benefit and protection. As said in the Prater case, the relationship of the parties was adverse and the fact that the Association may have known at some prior date that persons were claiming liens on the property does not alter its legal liability. It was not under any duty to Willding except to deliver the check to Lawson and Deere and that duty was performed.

██ We do not think the regulations of the Veterans' Administration requiring persons making G. I. loans to see that the veteran has a perfect title applies in the relationship of the parties to this contest. We think these regulations were intended only to lay down conditions precedent to the United States Government guaranteeing to the lending institution the loan of the veteran.

It is the insistence of the Association that its borrowers owed it the duty to see that they had title free of all liens to conform to the general covenants contained in the deeds of trust. We do not think the Association relied upon these covenants. It had a title certificate from a title company showing the true condition of both titles and, in the Talley case, if it had discharged its obligation of paying the money either to the borrower or for her benefit, the title would have conformed to the covenants. In view of our holding, the question is not material to the result in the Willding case.

It results that the decree in the Willding case is reversed. In the Talley case, since we hold that the liability of the Association is merely to account for the proceeds of the loan by showing payment (1) to the borrower, (2) to others on her order or (3) for her benefit and not for negligence in failing to discover liens, the measure of its liability is not the amount outstanding in liens but the $2,597.15 paid without authority to the contractor-seller (Lawson and Deere) and $300.00 paid to Kemp and Company as real estate commissions for selling the property due by Lawson and Deere, making a total of $2,897.15 with 6% interest from July 29, 1946. As so modified the decree in the Talley case is affirmed. Costs of both courts will be equally divided between the Association and Willding.

Hale and Howard, JJ., concur.