## Garbish v. Malvern Federal Savings and Loan Association

*Jerome R. Balka, Louis E. Levy,* and *Audrey Nagelberg,* for plaintiffs.

*Robert J. Shenkin,* for defendant.

WOOD, *J.,* May 22, 1980—This case brings before us a matter of first impression in the Commonwealth of Pennsylvania, but it is a wonder to the court that similar situations have not produced definitive litigation before this. The question before the court is whether a lender in a construction mortgage situation has any responsibility to the borrower if the lender makes unwarranted payments to the contractor? We hold herein that if, in such a situation, the lender insists on absolute control over the disbursement of funds already loaned to the borrower, and excludes the borrower from any control or input over their disbursement, the lender thereby assumes a responsibility to the borrower to use due care to see that the disbursement is carried out in a reasonable and prudent manner. This obli-

gation carries with it the burden of taking reasonable steps to assure that such payments as are made to the contractor are warranted. The measure of damages for failure of the lender to perform this obligation is that amount of the borrower's funds which the lender has disbursed in contravention of its duty.

Procedurally, this matter comes before us on preliminary objections to plaintiffs' complaint, and so for purposes of decision, we must accept as correct all the well-pleaded facts contained in plaintiffs' complaint: Stringert & Bowers, Inc. v. On-Line Systems, Inc., 236 Pa. Superior Ct. 196, 345 A. 2d 194 (1975). That complaint indicates that plaintiffs, pursuant to their wish to have a home built for themselves near Honeybrook, Pa., contacted a contractor known as Eastern Regional Builders. Eastern Regional Builders agreed to build a home for plaintiffs on a lot near Honeybrook, pursuant to a written contract which is attached to the pleadings. In order to finance the transaction, plaintiffs applied to defendant Malvern Federal Savings and Loan Association for a construction mortgage. Malvern agreed to lend plaintiffs $39,000, and as part of the understanding required plaintiffs to execute a second agreement with the contractor on a form provided by Malvern Federal, and also required plaintiffs to deposit with Malvern Federal the further sum of $16,000, consisting of moneys originating with plaintiffs, which Malvern would disburse to the contractor as the work progressed, along with the $39,000 which it (Malvern) was lending.

Plaintiffs proceeded to settle for the lot on which the home was to be built, and also settled with Malvern for the mortgage loan. The construction work then progressed.

Further, according to the complaint, Malvern then proceeded to make payments to the contractor, based on vouchers submitted by the latter; totaling $49,702.95 of the total $55,000 construction fund. Malvern did not request approval from plaintiffs prior to making such payments, and was, indeed, not obliged to do so under the terms of its various loan agreements with plaintiffs, which are also attached as exhibits to the pleadings.

In January 1978, following disbursement of the above amounts, plaintiffs became dissatisfied with the work that the contractor had performed, and requested Malvern to halt further payments. Malvern complied, and apparently the contractor left the job. Plaintiffs then, acting as their own contractors, incurred expenses totaling $40,323 in order to complete the home. Giving credit for the $5,297.15 left in the Malvern construction fund, plaintiffs seek here to recover $35,025.85 from Malvern.

Various courts in other jurisdictions have addressed this problem, or aspects of it, and the cases are collected in a footnote in this opinion.[1] No pur-

1. The following cases are contrary to our holding: Linder v. Citizens State Bank of Malakoff, 528 S.W. 2d 90, 94 (Tex. Civ. App. 1975); Armietta v. Clevetrust Realty Investors, 359 So. 2d 540, 543 (Fla. App. 1978); and Goodner v. Lawson, 33 Tenn. App. 676, 232 S.W. 2d 587, 591 (1950).

The following cases ae in accordance with our holding: Daniels v. Big Horn Federal Savings and Loan Association, 604 P. 2d 1046, 1048 (Wyo. 1980); Prudential Insurance Co. of America v. Executive Estates, 369 N.E. 2d 1117, 1128 (Ind. App. 1977); Fikes v. First Federal Savings and Loan Association of Anchorage, 533 P. 2d 251, 261 (Alaska 1975); Cambridge Acceptance Corporation v. Hockstein, 102 N.J. Super. 435, 246 A. 2d 138, 141 (1968); M.S.M. Corporation v. Knutson Company, 283 Minn. 527, 167 N.W. 2d 66, 68 (1969); Bollinger v. Livingston State Bank and Trust Co., 187 So. 2d 784, 787 (La. App. 1966); and Cook v. Citizens Savings & Loan Association, 346 So. 2d 370, 372 (Miss. 1977).

pose will be served in analyzing each case individually; suffice it to say that the court is more impressed with the reasoning of those cases which are in accordance with our holdings stated above. In particular, we would point to the following statement appearing in Prudential Insurance Company of America v. Executive Estates, 369 N.E. 2d 1117, 1128 (Ind. App. 1977), as follows:

". . . A mortgagee-lender who insists on controlling disbursement of the loan proceeds in order to protect its own interests (mortgage lien), deprives the mortgagor of possession of the loan proceeds for which he has bargained, and in doing so must equitably be considered as the mortgagor's agent saddled with a duty to use reasonable care to protect the principal's interests. . . ."

There are some Pennsylvania decisions which have touched on this issue. For instance, in Federal Land Bank of Baltimore v. Fetner, 269 Pa. Superior Ct. 455, 410 A. 2d 344, 348 (1979), the Superior Court stated:

"Ordinarily, there is no duty on the part of a lender to inspect the mortgaged property to determine that the borrower is obtaining that which he may have been promised by the vendor or that which he believes he is obtaining. Unless some further obligation is assumed, the lender's inspection of the premises to be mortgaged is made only to ascertain whether the property has sufficient value to secure the loan and is made by the lender for its benefit only."

See, also, Carlsberg Resources Corporation v. Cambria Savings and Loan Association, 413 F. Supp. 830 (W.D. Pa. 1976). Although we adhere, as we must, to the general statement of law as enunciated by the Superior Court, we believe that if

a lender insists on controlling disbursement of funds to the exclusion of the borrower, those additional facts take the transaction out of the ordinary and impose on the lender an obligation to act as a fiduciary (or at least in a manner similar to a fiduciary) with respect to the borrower's funds. It is, after all, the borrower's money, and yet the realities of the private residence mortgage market are such that the borrower is virtually powerless to alter the situation if the lender insists on control of the funds.

It might be noted here that plaintiffs have not specifically and pointedly alleged that they have been excluded from any control of the construction fund. We consider such proof essential to recovery, and as part of our order entered herein will give plaintiffs the opportunity to so allege.

Having found a duty imposed generally upon the lender in this situation, we must then determine whether the lender has specifically and successfully unburdened itself of those obligations by anything contained in the contracts between the parties. We note that the building agreement contained the following language:

"(a) And it is further understood, covenanted and agreed that the said Association is in no way whatever liable to either of the parties hereto for the performance of any act, matter or thing to be done or performed by either of the said parties or for the failure of either of said parties to keep and perform any of the covenants hereof, nor shall said Association be responsible or liable to either of said parties or to any other person for any matter or thing connected with this contract or said building operation, excepting insofar as said Association shall have undertaken, in writing duly executed, to assume or undertake such obligations to the parties. Association may make as many inspections of the premises

as it deems necessary but such inspections shall be for its own protection alone and shall not be construed as a waiver of any obligation assumed by the parties hereto.

"(b) It is expressly covenanted and agreed that Malvern Federal Savings and Loan Association may exercise all rights, powers, privileges and discretions conferred upon the owner by the provisions of this agreement or otherwise, without liability to the owner or the contractor for actions so authorized and taken in good faith.

"(c) It is distinctly understood and agreed by and between the parties to this contract (said owner and said contractor) . . . that the said Association (which is lending money on the faith and credit of this contract) may, in its discretion, when and as the same may be deemed advisable by it, change or alter the method or basis of the payments as hereinabove mentioned and set forth, and that by reason of its so doing, the said Association shall not incur liability of any kind whatsoever to the said owner, contractor and/or surety or sureties; nor shall said owner, contractor and/or surety or sureties be relieved or discharged from any liability, duty or responsibility owed to Association or any other party in interest."

Does this language relieve Malvern of its responsibility here?

In general, an exculpatory clause is valid if:

"'(a) It does not contravene any policy of the law . . .' (b) 'the contract is between persons relating entirely to their own private affairs' . . . (c) 'each party is a free bargaining agent' and the clause is not in effect 'a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other

than to reject the transaction entirely.'" Richard's 5 & 10, Inc. v. Brooks Harvey Realty Investors, 264 Pa. Superior Ct. 384, 386, 399 A. 2d 1103, 1105 (1979).

In addition, even if an exculpatory clause has general validity, the Supreme Court has established standards that must be met before it will relieve one from liability that the law would otherwise impose:

(1) It must be strictly construed since it is not a favorite of the law. (2) It must spell out the contention of the parties with the greatest particularity so as to show an intent to release from liability beyond a reasonable doubt by express stipulation; no inference from words of general import can establish it. (3) It must be construed against the party seeking immunity. (4) The burden to establish immunity is upon the party who asserts it: Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Asso., 423 Pa. 288, 291-92, 244 A. 2d 620, 622, 623 (1966); see, also, Zimmer v. Mitchell and Ness, 253 Pa. Superior Ct. 474, 385 A. 2d 437 (1978).

Finally, there is authority for the proposition that a confidential relationship may exist between mortgagor and mortgagee, if the evidence establishes that the borrower and lender do not deal on equal bargaining terms: Buchanan v. Brentwood Federal S. & L. Assn., 74 D. & C. 2d 754, 775 (1975).

In this case we have a contract between prospective homeowners and a lending institution, and we believe that we can take notice of the common experience of home residence borrowers in this county who are virtually helpless to alter in any meaningful way the terms under which home resi-

dential loans are made.[2] Thus, we are faced with a so-called "contract of adhesion," which is not a favored instrument in the law, as noted above. In addition, careful reading of the actual language used, construing it against the drafter of the language, persuades us that the exculpatory paragraphs do not specifically cover the situation at hand. Finally, even if the language did cover the situation, we are concerned with a breach of the duty of due care, and again the policy of our courts has been not to permit a person or institution to obtain advance exculpation of the consequences of its own negligence: Galligan v. Arovitch, 421 Pa. 301, 219 A. 2d 463 (1966); Leidy v. Deseret Enterprises, Inc., 252 Pa. Superior Ct. 162, 381 A. 2d 164 (1977). Hence, we do not consider that the various agreements between the parties relieve the lender of the obligations that we have announced above.

As noted, we do consider that under these circumstances a lender is responsible only for restoring to the borrower those sums which the lender improperly disbursed, with interest. Plaintiffs here have sought as damages the entire cost of completion to them, less credit for the amount left in the construction fund. We hold that plaintiffs have not properly conceived their measure of damages, and since defendants have filed two objections to plaintiffs' allegations of damages, we will address ourselves to both of them together.

We will sustain the motion for a more specific

2. We consider that the actual experience of plaintiffs in this particular case, regarding their bargaining rights with respect to the provisions concerning the control and disbursement of the construction loan proceeds, are susceptible of pleading and proof. Our order in this matter will permit plaintiffs to plead whatever the facts are with respect to their particular situation.

pleading, because the pleading which plaintiffs have filed simply gives a lump sum figure, without specifying what sums, if any, were paid for work not properly performed; what sums, if any, were paid to persons not authorized to receive payment; and what sums, if any, were paid for other purposes for which plaintiffs are not entitled to recover. We consider the motion to strike impertinent matter to be an appropriate vehicle by which defendants can raise the question of the proper theory of damages in this case, and we also believe that our comments above satisfactorily set forth our position on the damage issue.

The court wishes to thank both counsel for their able exposition of the issues in this matter.

### ORDER

And now, May 22, 1980, upon consideratiion of the preliminary objections filed by defendants in the above matter, the demurrer, and the motion to strike impertinent matter are all sustained, with leave to plaintiffs to plead over in accordance with the foregoing opinion, within 30 days of this date.