# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 23, 2012 Session

## JIM SUZICH v. FRANK BOOKER and wife, BEVERLY BOOKER and JOHN S. BOMAR, Trustee, KATIE WINCHESTER, Trustee, and FIRST CITIZENS NATIONAL BANK

### Direct Appeal from the Chancery Court for Shelby County
#### No. CH-06-1705-III    Kenny Armstrong, Chancellor

### No. W2011-02583-COA-R3-CV - Filed July 27, 2012

This appeal involves a construction loan obtained by the plaintiffs for the construction of a new home. The loan proceeds were exhausted prior to the completion of the home. The plaintiffs then sued the lender bank for breach of contract, alleging that the bank had a duty to inspect the construction prior to disbursing funds, and that its failure to complete inspections resulted in improper disbursement of the loan funds. The trial court granted summary judgment to the bank upon concluding that the bank had no contractual duty to inspect the construction of the residence. The plaintiffs appealed. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

J. Vincent Perryman, J. Michael Fletcher, Memphis, Tennessee, for the appellants, Frank Booker and wife, Beverly Booker

Louis Jay Miller, Memphis, Tennessee, for the appellee, First Citizens National Bank

**OPINION**

### I. FACTS & PROCEDURAL HISTORY

In October 2003, Frank and Beverly Booker ("the Bookers") contracted with Jim Suzich for the construction of a home near Eads, Tennessee. To finance the construction, Mr. Booker obtained a construction loan from First Citizens National Bank ("the Bank") in the amount of $1.35 million. In connection with the loan, he signed a construction loan agreement, promissory note, deed of trust, and other documents. The Bookers later executed loan modification agreements which increased the principal balance of the loan to $1.7 million.

During the process of construction, the Bookers or their representative would generally make a request for loan draws, sometimes accompanied by a description of the intended uses of the particular draw and copies of bills to be paid by that draw, and a bank officer would order the requested amount of funds to be placed in the Bookers' construction loan checking account. The Bookers would then issue checks out of that account to pay the bills.[1]

The loan funds were exhausted in the spring of 2006, before the home was completed. In June of 2006, the contractor, Mr. Suzich, filed notice of his claim for a materialmen's lien against the property. He then filed this lawsuit to enforce the materialmen's lien, claiming that he was still owed $95,000 for services and materials provided. He named as defendants the Bookers, the Bank, and two individuals in their official capacities as trustees of the Bank's deeds of trust.[2]

The Bookers filed a cross complaint against the Bank for breach of contract, based upon the following provision of the construction loan agreement:

8.      CONDITIONS PRECEDENT TO ALL LOAN DISBURSEMENTS.
        The following conditions will be complied with before you [the Bank]

---

[1] In March of 2006, toward the end of construction, a few checks were issued by the Bank directly to vendors. According to the affidavit of the bank president, these funds were advanced "in the hope that the Bookers could complete construction and obtain a permanent loan from another lender and pay off the [Bank's] construction loan." With the exception of these few checks, however, the loan funds were generally disbursed to the Bookers' construction loan checking account, from which the Bookers issued checks to pay bills.

[2] We will refer to the Bank and the trustees collectively as "the Bank," as the parties have done in their briefs.

> disburse . . . any Loan reserves and proceeds.
>
> . . . .
>
> D.    Inspection. You [the Bank] or your [the Bank's] consulting architect will have inspected the Project and have found the Project at that time reflects good quality work and materials, complies with the Plans and Specifications and completes that construction stage.

The Bookers claimed that the Bank disbursed all of the loan funds "without performing any of the inspections required" by this provision of the contract. The Bookers alleged that the Bank did not inspect the progress of the construction until January of 2006, after it had already disbursed all of the loan funds. The Bookers alleged that as a result of the Bank's failure to inspect prior to disbursing funds, disbursements were made which should not have been made, and the Bookers used all of the loan proceeds before construction was completed. The Bookers sought to recover additional construction and finance costs in an unspecified amount.[3]

The Bank filed an answer denying that it failed to inspect the construction but also denying that it owed any duty to the Bookers to inspect. It then filed a motion for summary judgment on these same grounds. The Bank submitted an affidavit from its former community bank president for its local branch, Nick Nichols, who stated that he inspected the construction of the Bookers' residence on numerous occasions between 2004 and 2006, and he attached to his affidavit approximately 23 one-page inspection sheets that were dated between 2004 and 2006.

Regarding the Bank's alleged duty to inspect, or lack thereof, the Bank cited the following additional provisions of the construction loan agreement:

> 5. ARCHITECTS AND GENERAL CONTRACTOR. The Project's architects and professional engineers exclude your [the Bank's] consulting architect. You [the Bank] chose your consulting architect, an independent architect, professional engineer or other construction consultant to periodically inspect

---

[3] The Bank eventually foreclosed on the property, completed construction at its own expense, and sold the house to a third party. The Bank filed a counterclaim against the Bookers for a deficiency judgment, and the trial court entered judgment on this counterclaim in favor of the Bank. Neither party challenges this judgment on appeal.

We also note that the contractor's original claim against the Bank to enforce the lien was dismissed because Mr. Suzich was not a licensed contractor, and therefore, the court concluded, he could not avail himself of the materialmen's lien statutes pursuant to Tenn. Code Ann. § 62-6-128. This ruling was not appealed. The only parties involved on appeal are the Bookers and the Bank.

the Project's progress and quality for the sole purpose of protecting your [the Bank's] interests.

. . . .

13. AGREEMENTS. Until the Loan and all related debts, liabilities and obligations are paid and discharged, I [the Bookers] will comply with the following terms, unless you [the Bank] waive compliance in writing.

> . . . .
> I.   Construction.  I [the Bookers] will cause the Project's development, construction and equipping and any offsite development to be done diligently, continuously, on time, with high quality labor and materials and strictly by the Plans and Specifications.
>
> . . . .
> L.   Lender's Actions Only for Lender's Protection. I [the Bookers] agree that you [the Bank] and your consulting architect are not obligated to inspect, supervise, prevent Construction Liens, or inform me [the Bookers] about the Project's progress or performance.  You [the Bank] and your consulting architect act for your protection when inspecting the Project, procuring sworn statements and waivers of liens, approving change orders and similar actions. An Inspection for or by you [the Bank] does not waive any default and is not a representation that I have complied with this Agreement, any applicable laws or that the Project is free from defective materials or labor.

The Bank contended that pursuant to these provisions, it had no duty to inspect the construction for the benefit of the Bookers.

In response to the motion for summary judgment, the Bookers claimed that, despite Mr. Nichols' affidavit to the contrary, no inspections had taken place.  To support their assertion, the Bookers presented the affidavit of Plaintiff Beverly Booker, who stated that either she or her husband was on the construction site from 8 a.m. to 7 p.m. every day during which construction was taking place, and that neither Mr. Nichols nor any other representative of the Bank had inspected the construction prior to January of 2006. Approximately two years after the filing of this affidavit, Mrs. Booker filed a supplemental affidavit to correct an "erroneous statement" in her previous affidavit, and she clarified that she and her husband were only on the construction site from 8 a.m. to 7 p.m. "every day during the last four months in which construction was taking place," although it is not clear

to which four months she was referring.

The trial court entered summary judgment in favor of the Bank on the Bookers' cross-claim for breach of contract, finding that the Bank "had no duty under the Construction Loan Agreement between the Bank and the Bookers to inspect the construction of the Bookers' residence . . . thereby negating an essential element of the Bookers' Cross-claim against [the Bank] and entitling [the Bank] to Summary Judgment[.]" This order was certified as final pursuant to Tennessee Rule of Civil Procedure 54.02, and the Bookers filed a notice of appeal.[4]

## II. ISSUES PRESENTED

On appeal, the Bookers argue that the trial court erred in concluding that the Bank had no duty under the construction loan agreement to inspect the construction for their benefit. The Bank contends that the trial court properly entered summary judgment in its favor, either because it had no duty to inspect, or because it did conduct inspections. For the following reasons, we affirm the trial court's decision to grant summary judgment to the Bank.

## III. STANDARD OF REVIEW

"Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." *Ross Prods. Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2-3 (Tenn. Ct. App. Dec. 5, 2007) (citing *Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999); *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983)). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

---

[4] The trial court subsequently entered the deficiency judgment in favor of the Bank on its counterclaim, which thereby resolved all of the claims between the Bank and the Bookers.

## IV. DISCUSSION

The parties dispute whether the outcome of this case is controlled by our decision in ***Lomax v. Headley Homes***, No. 02A01-9607-CH-00163, 1997 WL 269432 (Tenn. Ct. App. W.S. May 22, 1997). In that case, the plaintiffs obtained a construction loan from a bank, and they later sued the bank for negligently disbursing loan proceeds to the builder for work that had not been completed. *Id.* at *2. On appeal from the trial court's grant of summary judgment to the bank, we were faced with the task of determining "what duty, if any, [the bank] owed to the Lomaxes with respect to inspection of the Lomaxes' home and disbursement of the loan proceeds." *Id.* We explained:

> In the absence of a contrary agreement between the parties, the general rule in Tennessee is that a lender owes no duty to a borrower to disburse loan proceeds for the borrower's benefit. In disbursing loan proceeds, therefore, a lender has no affirmative duty to protect the borrower's interests. *Goodner v. Lawson*, 33 Tenn. App. 676, 232 S.W.2d 587, 589-90 (Tenn. App. 1950) (in absence of agreement, loan association had no duty to pay mechanic's liens out of loan proceeds prior to disbursing loan proceeds to contractor); see also *Forest Inc. v. Guaranty Mortgage Co.*, 534 S.W.2d 853, 856-59 (Tenn. App. 1975) (in absence of express contractual provision or industry custom, lender had no duty to subordinate creditors, such as suppliers, materialmen, and developer, to inspect construction and advance funds to contractor only in proportion to percentage of construction completed).
>
> An exception to the general rule arises, however, where a lender assumes such a duty by express or implied agreement. *Goodner v. Lawson*, 232 S.W.2d at 589-90. For example, where a lender retains the loan proceeds and assumes the responsibility of discharging prior liens, the lender may be liable for its negligent failure to perform this duty. *Prater v. Fidelity Trust Co.*, 161 Tenn. 626, 34 S.W.2d 205, 207 (Tenn. 1930); see also *Crum v. AVCO Fin. Servs.*, 552 N.E.2d 823, 827 (Ind. Ct. App. 1990) (lender who agrees to disburse loan proceeds for certain purpose must exercise due care in performance of obligation); 59 C.J.S. Mortgages § 297 (1949) ("If ... the mortgagee agrees to apply the proceeds for a certain purpose he is liable for a failure to do so.").
>
> Although a lender's duty to a borrower when disbursing construction loan proceeds apparently has not been considered by Tennessee courts, courts in other jurisdictions have recognized that a lender's duty in this situation is governed by the provisions of the construction loan agreement between the lender and the borrower. Thus, in *Henry v. First Federal Savings & Loan Ass'n*, 313 Pa.Super. 128, 459 A.2d 772, 775 (Pa. Super. Ct. 1983), a

-6-

Pennsylvania court held that, in the absence of a contractually assumed duty, a loan association owed no duty to borrowers to inspect construction of the borrowers' home prior to making progress payments to the borrowers' contractor. Although the construction loan agreement's terms gave the association the right to enter the construction premises and to conduct inspections, the agreement did not require the association to do so. Similarly, in *Daniels v. Army National Bank*, 249 Kan. 654, 822 P.2d 39, 42 (Kan. 1991), the Kansas court held that, in the absence of a contractual provision to the contrary, the bank had no duty to inspect the construction site for the protection of the borrowers prior to disbursing loan proceeds. There, the contract authorized, but did not require, the bank to inspect the progress of the work and the quality of the workmanship. See also *Meyers v. Guarantee Sav. & Loan Ass'n*, 79 Cal. App. 3d 307, 144 Cal. Rptr. 616, 619-20 (Ct. App. 1978) (holding that, in absence of contractual provision imposing such duty, savings and loan association had no duty to inspect construction to determine that work had been done according to specifications prior to making payments to contractor from loan proceeds).

*Id.* at *2-3 (footnote omitted). Examining the construction loan agreement executed by the Lomaxes and the bank, we found that it did impose a duty, albeit a limited one, on the bank relative to its disbursement of the loan proceeds. *Id.* at *3. The agreement provided that the bank agreed "to advance and disburse the loan . . . in installments as work progresses," but it provided that the bank was "authorized to disburse funds under its control in said construction loan account only in proportion to its inspector's report of progress[.]" *Id.* at *1. The agreement further provided:

Lender has no liability in connection with said improvements or the construction or completion thereof or work performed thereon and has no obligation *except to advance the loan as herein agreed.* The Borrower [the Lomaxes] acknowledges and hereby accepts the sole responsibility for the selection of his own contractor, materials, supplies and equipment to be used in the construction, and the Lender assumes no responsibility for the completion of the improvements according to the plans and specifications and for the contract price, all inspections by Lender or its representative for its benefit, and the Borrower should not rely on such inspections or acceptance by Lender to be for his protection regardless of the circumstances, representations or appearance as may hereinafter exist.

*Id.* (emphasis added). We found that the express terms of the construction loan agreement imposed a two-fold duty on the bank: (1) the bank, through its inspector, was obligated to

make a report of progress of the construction, and (2) the bank was obligated to disburse the loan proceeds only in proportion to the inspector's report of progress. *Id.* at \*3. Because the bank expressly assumed the duty to disburse the proceeds subject to the provisions of the parties' agreement, it could be held liable for its negligent performance of this duty.[5] *Id.* Nevertheless, we emphasized the limited nature of the duty owed by the bank. Under the construction loan agreement, the bank "only assumed a duty to inspect the progress of the work and to make loan disbursements in proportion to such progress." *Id.* at \*4. It did not undertake to inspect the construction for defects, and therefore, to the extent that the Lomaxes alleged such a duty, summary judgment was properly granted for the bank.[6] *Id.*

Applying the analysis set forth in *Lomax*, we will look to the terms of the construction loan agreement between the Bookers and the Bank in order to determine whether the Bank assumed a duty relative to disbursement of the loan proceeds and inspections of the construction. In doing so, we must keep in mind that "'[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.'" *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-704 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975)). "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano*, 995 S.W.2d at 95 (citing *Hamblen County*, 656 S.W.2d at 333-34; *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580)). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Maggart*, 259 S.W.3d at 704 (citing *Davidson v. Davidson*, 916 S.W.2d 918 922-23 (Tenn. Ct. App. 1995)).

The Bookers ask us to focus on the following provision of the construction loan

_____

[5] Prior to signing the agreement, a bank employee had informed the Lomaxes that their contractor was on the bank's "approved list of builders," that the bank "had an inspector in its employ who would make sure [the contractor] was paid only for work that was actually completed," and that the bank "would make disbursements to [the contractor] only for work that was actually completed." *Id.* at \*1. The Lomaxes signed the construction loan agreement in reliance upon these representations. After construction commenced, the bank disbursed the loan proceeds directly to the contractor, without asking for the Lomaxes' permission prior to disbursements. When Mrs. Lomax questioned that practice, she was told "that was the procedure." The bank's inspector admitted that he "did a really bad job inspecting the Lomax home," and as a result, the contractor received disbursements for work that was never completed, and the Lomaxes were left with a home that was not substantially complete and that contained "blatant and obvious defects." *Id.* at \*2.

[6] After concluding that the bank did owe a limited duty to the Lomaxes, we went on to consider the validity of the exculpatory provision found in the parties' contract. However, we noted that it if the bank had not owed a duty to the Lomaxes, then the Lomaxes would have had no cause of action, and there would have been no need to decide the issue of the enforceability of the exculpatory provision. *Id.* at \*2.

agreement:

> 8.     CONDITIONS PRECEDENT TO ALL LOAN DISBURSEMENTS. The following conditions will be complied with before you [the Bank] disburse . . . any Loan reserves and proceeds.
>
> . . . .
>
> D.     Inspection. You [the Bank] or your consulting architect will have inspected the Project and have found the Project at that time reflects good quality work and materials, complies with the Plans and Specifications and completes that construction stage.

If we were to read this section independently and in isolation, we could read it to mean that the Bank was only authorized to disburse loan proceeds if it had completed an inspection of the project for quality and completion, as the Bookers suggest. However, "we cannot read portions of a contract in isolation – they must be read together to give meaning to the document as a whole." *Maggart*, 259 S.W.3d at 705.

> 'In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.'

*Id.* at 704 (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)). Prior to the section quoted by the Bookers, Paragraph 2 provided that the Bank was obligated to disburse advances as long as "*I* [*the Bookers*] *have complied with all conditions precedent* required for each advance." (Emphasis added). The sections entitled "conditions precedent" listed numerous items and conditions that the Bank was entitled to demand from the Bookers before disbursing advances, such as documents, timely loan payments, and surveys, and one of the sections also listed inspections. That subsection is the one relied upon by the Bookers, and it provided that the bank "will have inspected the Project" and found that it reflects good quality work and sufficient progress. A later section of the agreement required the Bookers to "help" the Bank or its consulting architect "to enter onto the Property and inspect the quality and progress of the Project's performance, labor and materials," and it required the Bookers to promptly comply with any requirement of the Bank to remove any dissatisfactory work. The agreement then stated,

> L. Lender's Actions Only for Lender's Protection. *I [the Bookers] agree that you [the Bank] and your consulting architect are not obligated to inspect, supervise, prevent Construction Liens, or inform me [the Bookers] about the Project's progress or performance.* You [the Bank] and your consulting architect act for your protection when inspecting the Project, procuring sworn

statements and waivers of liens, approving change orders and similar actions. An Inspection for or by you [the Bank] does not waive any default and is not a representation that I have complied with this Agreement, any applicable laws or that the Project is free from defective materials or labor.

(Emphasis added). Considering all provisions of the construction loan agreement together, we conclude that the Bank was entitled to demand that an inspection be completed, at its option, before disbursing funds to the Bookers. However, pursuant to the plain language of the agreement, the Bank was "*not obligated to inspect . . .* or inform [the Bookers] about the Project's progress or performance." (Emphasis added). The agreement's "conditions precedent" were obligations of the Bookers in order to be entitled to disbursements; they were not obligations of the Bank in order to be permitted to disburse funds. As such, the Bank had no contractual duty to complete inspections, for the benefit of the Bookers or otherwise, and the trial court properly granted summary judgment to the Bank on the Bookers' breach of contract claim which alleged a failure to complete inspections.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed. Costs of this appeal are taxed to the appellants, Frank and Beverly Booker, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.