**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0923n.06

**No. 11-6102**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 20, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| In re: McKENZIE FINANCIAL CENTER, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | ON APPEAL FROM THE |
| WESTERN SURETY COMPANY, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Appellant, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| v. | ) | |
| | ) | |
| REGIONS BANK, | ) | |
| | ) | |
| Appellee. | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and DOWD, District Judge.[*]

GRIFFIN, Circuit Judge.

This appeal originated in an adversary proceeding in bankruptcy court brought by appellant Western Surety Company ("Western Surety") against appellee Regions Bank ("the Bank") for breach of contract. Western Surety appeals the district court's affirmance of the summary judgment entered by the bankruptcy court in favor of Regions Bank. For the reasons set forth below, we affirm.

_____

[*]The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

I.

In May 2005, the debtor, McKenzie Financial Center, LLC ("McKenzie"), entered into a contract with C & I Specialty Co., Inc. ("C & I"), a general contractor, to construct an office building in Cleveland, Tennessee. Western Surety issued performance bonds to guarantee C & I's obligations under the construction contract. In September 2005, McKenzie contracted with Regions Bank's predecessor-in-interest, Am South Bank, to finance the construction. Pursuant to the financing contract, Regions Bank loaned McKenzie over $4.6 million. McKenzie executed a promissory note in favor of the Bank, which was secured by a deed of trust to the real estate on which the office building was being built.

The financing contract set forth numerous conditions precedent to the disbursal of the loan proceeds and advances to McKenzie. Section 8.19 of the financing contract provided:

> <u>Liens; Setoff by Bank</u>. Borrower hereby grants to the Bank a continuing lien, as security for the Note and all other indebtedness of the Borrower to the Bank, upon any and all of its moneys, securities and other property and the proceeds thereof, now or hereafter held or received by or in transit to, the Bank from or for the Borrower, and also upon any and all deposits (general or special, matured or unmatured, including, but not limited to, the construction checking account with the Bank for this Loan) and credits of the Borrower against the Bank, at any time existing. Upon the occurrence of any Event of Default as specified above, the Bank is hereby authorized at any time and from time to time, without notice to Borrower, to set off, appropriate, and apply any and all items hereinabove referred to against any or all indebtedness of the Borrower to the Bank.

The financing agreement also required that "[a] retainage equal to ten percent (10%) of Construction Costs shall be deducted from each advance after the first Loan advance (the 'Retainage')," and further, that "[n]o Retainage funds shall be disbursed until all the conditions

specified in Section 3.3 have been satisfied." The three conditions listed in Section 3.3 called for evidence of the proper filing of a notice of completion, evidence that no notice of lien had been filed or received within thirty days after the filing of the notice of completion, and the production of "such other reasonable documents and items requested by the Bank." In addition, Section 8.4 of the financing agreement provided:

> Provisions for Exclusive Benefit of Bank. All conditions to the obligations of Bank to make disbursements hereunder are imposed solely and exclusively for the benefit of Bank, and its successors and assigns. No other person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Bank will refuse to make advances in the absence of strict compliance with any or all of such terms and conditions. No other person shall, under any circumstances, be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Bank at any time if, in its sole discretion, it deems it advisable to do so.

With the financing contract in place, construction commenced and continued over a period of approximately two years, during which time the Bank disbursed the loan proceeds requested by McKenzie and increased the principal balance of the loan pursuant to the parties' execution of a loan modification agreement. As the building neared completion, McKenzie exhausted its line of credit with the Bank, defaulted on the loan, and failed to satisfy the conditions precedent to disbursement of the retainage. As a result, the Bank exercised its contractual set-off rights and denied McKenzie's final draw request to release the funds owed to C & I for its 100% completion of the construction project. The Bank offset McKenzie's remaining line of credit under the financing contract, in the amount of $499,027.64, against McKenzie's obligation to repay the Bank the principal amount of the construction loan.

Western Surety, as C & I's assignee, obtained a state-court judgment against McKenzie in the amount of $575,228.02, the unpaid balance of the construction costs, but McKenzie filed for Chapter 7 liquidation bankruptcy relief. In the bankruptcy case, the Bank submitted an uncontested and secured proof of claim against the construction-site real property, asserting its deed of trust as a first-priority lien. Western Surety then initiated this adversary proceeding against the Bank for breach of contract. It asserted, inter alia, that as C & I's assignee, it was a third-party beneficiary of the financing contract and was entitled to payment of the retainage held by the Bank. And, although the financing contract itself did not require that the retainage be escrowed for the benefit of C & I or other subcontractors and laborers, Western Surety argued that Tenn. Code Ann. § 66-11-144(a) (2004), which, during the relevant time period, imposed such an escrow requirement "in any contract for the improvement of real property" where "a certain amount or percentage of the contract price is held back by the owner or contractor," should apply to the Bank's retainage for public policy reasons.[1]

On the parties' cross-motions for summary judgment, the bankruptcy court granted the Bank's motion and denied Western Surety's motion. *See In re McKenzie Fin. Ctr. LLC*, 53 Bankr. Ct. Dec. 285, 2010 WL 4670060 (Bankr. E.D. Tenn. Nov. 9, 2010) (unpublished). Noting Western Surety's concession that McKenzie had not complied with the conditions precedent to final disbursement of the loan proceeds, the court held that the Bank was not contractually obligated to

---

[1]Section 66-11-144 was transferred to Tenn. Code Ann. § 66-34-104 by 2008 Pub. Acts, c. 804, § 2, effective July 1, 2008.

release the retainage because of the nonperformance and defaults of McKenzie, and that Western Surety, as an asserted third-party beneficiary, succeeded to no greater rights than McKenzie under the contract. The bankruptcy court further held that the Bank was not subject to the escrow requirements of Tenn. Code Ann. § 66-11-144(a), because it was not an "owner" to whom the statute applied. *See* Tenn. Code Ann. § 66-11-101(11).

Western Surety appealed the bankruptcy court's ruling to the district court, which affirmed the summary judgment in favor of the Bank. *See Western Surety Co. v. Regions Bank*, No. 1:10-cv-339, 2011 WL 3516132 (E.D. Tenn. Aug. 11, 2011) (unpublished). The district court held that "the undisputed facts before the bankruptcy court established that [McKenzie] defaulted on the financing contract" and, therefore, the Bank "was within its rights to apply the retainage funds to offset [McKenzie's] outstanding loan obligation" and was not required to disburse the retainage to Western Surety. 2011 WL 3516132, at *6. The district court also affirmed the bankruptcy court's determination that the Bank was not an "owner" as defined by the Tennessee retainage statute, and, expanding upon the bankruptcy court's ruling, the district court determined that the financing contract was not a "contract for the improvement of real property" as contemplated by § 66-11-144(a). *Id*. at *7-8. The court thus held that the Bank did not have a statutory duty to hold the retainage in escrow for the benefit of C & I (or Western Surety as its assignee). *Id*. at *9.

On appeal, Western Surety challenges the district court's decision that Tenn. Code Ann. § 66-11-144(a) does not apply to the present circumstances.

II.

"The district court reviews the bankruptcy court's grant of summary judgment *de novo*, as do we in turn." *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 746 (6th Cir. 2005). Under Federal Rule of Civil Procedure 56, which governs adversary proceedings, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Morris v. Brown (In re Brown)*, - - - F. App'x - - - -, 2012 WL 2989236, at *3 (6th Cir. July 23, 2012).

Tennessee law governs the claims raised in this case. *In re Dow Corning Corp.*, 456 F.3d 668, 684 (6th Cir. 2006). "In interpreting state law, we apply the law of the state's highest court, and when the state's highest court has not ruled on an issue, we must ascertain the state law from all relevant data, including the state's intermediate court decisions." *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 544 (6th Cir. 2012) (citation and internal quotation marks omitted).

"When construing a legislative enactment, courts are to give effect to the intention of the legislature adopting the statute or provision in question." *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (6th Cir. 2005). "Statutory construction must begin with the language employed by [the legislature] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 549 (6th Cir. 2012) (citation and internal quotation marks omitted). If the language under scrutiny is clear, we give effect to this plain meaning, *Broadcast Music, Inc.*, 396 F.3d at 769, but "[w]hen a plain reading leads to ambiguous or unreasonable results, a court may

look to legislative history to interpret a statute." *United States v. Vreeland*, 684 F.3d 653, 662 (6th

Cir. 2012). "[T]he words of a statute must be read in their context and with a view to their place in

the overall statutory scheme." *Discount Tobacco*, 674 F.3d at 549 (citation and internal quotation

marks omitted).

Western Surety argues that the Bank violated the terms of Tenn. Code Ann. § 66-11-144 by

failing to deposit the retainage in an escrow account for C & I and thus circumvented the protective

purpose of the statute when it set off those funds against McKenzie's repayment obligations. Section

66-11-144 provides:

> (a) Whenever, *in any contract for the improvement of real property*, a certain amount
> or percentage of the contract price is held back by the owner or contractor, that
> retained amount shall be deposited in a separate escrow account with a third party
> giving proper security for the performance of the obligation of the owner or
> contractor.
>
> (b) As of the time of the deposit of the retained funds, such funds shall become the
> sole and separate property of the contractor, subcontractor, materialman, or laborer
> to whom they are owed.
>
> (c) Upon satisfactory completion of the contract, to be evidenced by a written release
> by the owner or contractor, all funds accumulated in the escrow account together with
> any interest thereon shall be paid immediately to the contractor, subcontractor,
> materialman or laborer to whom such funds and interest are owed.
>
> (d) In the event the owner or contractor fails or refuses to execute the release
> provided for in subsection (c), then the contractor, subcontractor, materialman, or
> laborer, shall seek any remedy in a court of proper jurisdiction and the person holding
> the fund as escrow agent shall bear no liability for the nonpayment thereof to the
> contractor, subcontractor, materialman, or laborer.

Tenn. Code Ann. § 66-11-144 (emphasis added). This statute applies to all contracts for the

improvement of real property with a contract price of $500,000 or greater. *See id.* at subsection (g).

Compliance with the statute is mandatory and may not be waived by contract. *See id.* at subsection (h).

As noted, the district court based its grant of summary judgment in favor of the Bank in part on its conclusion that the financing contract between McKenzie and the Bank was not a "contract for the improvement of real property" that fell within the parameters of § 66-11-144(a). The court opined:

> [T]he Court is inclined to agree with [the] Bank . . . that the contract at issue in this case—between [McKenzie] and [the] Bank—was not a contract "for the improvement of real property" as contemplated by the statute. [Western Surety] puts heavy emphasis on the word "any" [in § 66-11-144(a)], but it would seem to the Court that the proper emphasis should be on the word *for*. The financing contract between [McKenzie] and [the] Bank could be characterized as *facilitating* the improvement of real property, *relating to* the improvement of real property, or *financing* the improvement of real property, but it was not a contract created *for* the improvement of real property. The contract at issue, in and of itself, had nothing to do with the construction or improvement of real property, and focused solely on the transfer of funds from [the] Bank to [McKenzie]. [McKenzie] used those funds to enter into a contract with the [C & I], and the contract between [McKenzie] and [C & I] was the kind of contract contemplated by the statute because it was explicitly *for* the improvement of real property, i.e., [C & I] was contracting to provide construction services to improve the property, and [McKenzie] was contracting to pay for those services.
>
> The Court will draw a simple analogy. When an individual procures a car loan from a bank, the loan agreement may state that the funds are being advanced *for* the purchase of a vehicle, but the contract between the individual and the bank is not a contract for the purchase of the vehicle; the bank is advancing funds to the individual so the individual can enter into a contract with another entity (a car dealership, another individual) to purchase the vehicle. As the Court has stated, this contract would *facilitate*, *relate to*, or *finance* the purchase of the vehicle, but it is not, at least in the Court's view, *for* the purchase of the vehicle.

Although the Tennessee state courts have not spoken on this issue, we agree with the district court's reasonable interpretation of the statute. Western Surety argues that because the Bank obtained a lien on the real estate and controlled the loan disbursements for the construction project, the financing contract is a "contract for the improvement of real property." Although, as Western Surety points out, the financing contract contains construction-related terminology and lien language, this does not transform it into a "contract for the improvement of real property" within the meaning of § 66-11-144(a). Western Surety's argument ignores the essence of the contract, which by its express terms is a "construction/mini-permanent *loan agreement*" entered into by the parties "*in order to provide funds* for the construction of . . . [an] office building located on certain real property . . . in Bradley County, Tennessee[.]" (Emphasis added, capitalization removed.) The provisions of the financing contract relate solely to the funding aspect of the construction project and McKenzie's financial obligations vis-a-vis the Bank. As the district court properly determined, it is one step removed from the contract that is the intended focus of § 66-11-144(a)—the construction contract between McKenzie and C & I—which, unlike the financing contract, addresses the details of the physical "improvement" of the property,[2] and the construction process. *See, e.g.*, *Reagan v. Higgins*, 88 S.W.3d 173, 179 (Tenn. Ct. App. 2002) (holding that a general contractor's breach-of-contract action against property owners for the nonpayment of a retainage allegedly owed under a motel construction project fell within the purview of § 66-11-144 because it involved a "contract for

---

[2]*See* Tenn. Code Ann. §§ 66-11-101(6) and (7) (2004) (defining "improve" and "improvement," respectively).

the improvement of real property" with a contract price greater than $500,000); *Vanderheyden v. Ajay, Inc.*, No. 02A01-9803-CH-00070, 1999 WL 562716, at *3 (Tenn. Ct. App. Aug. 2, 1999) (unpublished) (applying § 66-11-144 to a dispute over unpaid retainage arising from a construction contract between the defendant property owner and the plaintiff general contractor).

As both the district and bankruptcy courts recognized, were we to apply Western Surety's expansive definition of "any contract for the improvement of real property" to the present circumstances, the practical effect would be to nullify the financing contract between the Bank and McKenzie—the Bank would be "oblig[ed] to disburse the loan funds no matter what the contract said and no matter how egregious [McKenzie's] own defaults." *In re McKenzie Fin. Ctr. LLC*, 2010 WL 4670060 at *9. Although § 66-11-144 serves the remedial purpose of ensuring that funds obtained to improve real property will actually be dedicated to the improvement costs, we have no reason to believe that the Tennessee legislature intended to include construction-loan agreements between a lender and property owner within the scope of § 66-11-144. Indeed, both Tennessee's common and statutory law establish that in the absence of a contractually assumed duty, a lender has no obligation to make loan disbursements for the benefit of the borrower or third parties. *See Suzich v. Booker*, No. W2011-02583-COA-R3-CV, 2012 WL 3055991, at *5 (Tenn. Ct. App. July 27, 2012) ("[W]e will look to the terms of the construction loan agreement between the [property owners] and the Bank in order to determine whether the Bank assumed a duty relative to disbursement of the [construction] loan proceeds[.]"); *Lomax v. Headley Homes,* No. 02A01-9607-CH-00163, 1997 WL 269432, at *2-3 (Tenn. Ct. App. May 22, 1997) (unpublished) ("In the absence of a contrary

agreement between the parties, the general rule in Tennessee is that a lender owes no duty to a borrower to disburse loan proceeds for the borrower's benefit."); *Goodner v. Lawson*, 232 S.W.2d 587, 590 (Tenn. Ct. App. 1950) (holding that a loan association "was duty-bound to see to the payment of materialmen's liens only to the extent it assumed that duty by contract with its borrowers"); *cf.* Tenn. Code Ann. § 45-1-127(a) ("The fiduciary responsibility and liability of a financial institution . . . shall be limited solely to performance under the contract and shall not extend beyond the scope of the contract."). There is a dearth of evidence indicating that the Tennessee legislature intended to deviate from this established principle when it enacted § 66-11-144.

Here, Section 8.4 of the financing agreement expressly disavowed a contractual duty on the part of the Bank to make disbursements to a third party such as C & I. The retainage provision in the financing contract was executed "exclusively for the benefit of the Bank," to shield it from financial risks that came to fruition in this case. It was McKenzie's responsibility (not the Bank's) pursuant to its construction contract with C & I— the "contract for the improvement of real property" targeted by § 66-11-144—to create its own escrowed retainage account to pay the remaining balance owed to C & I for its construction services.

III.

Because the financing contract between the Bank and McKenzie is not a "contract for the improvement of real property" as contemplated by § 66-11-144(a), we affirm the judgment of the district court.